## SPLITTING CLAIM UP INTO SEVERAL CAUSES OF ACTION DEPRECATED.

Court of Appeals for Hamilton County.

WILLIAM BOSWELL V. SECURITY LIFE INSURANCE COMPANY.

Decided, December 21, 1916.

*Pleading—Damages for Breach of Contract—Successive Breaches do Not Require Separate Causes of Action—Arrest of Cause from Jury.*

1. Several breaches of a contract do not constitute separate causes of action, and in a suit for damages growing out of the breach it is not good practice to split up the claim into a number of causes.
2. The fact that a trial court in arresting a cause from the jury based its action on wrong grounds is immaterial where other grounds existed which warranted such action.

*Bettinger, Schmitt & Kreis,* for plaintiff in error.
*C. B. Matthews, H. D. Hinman* and *J. L. Gregory,* contra.

GORMAN, J.

Plaintiff in error asks for a reversal of the judgment of the court of common pleas in this proceeding. The trial court at the close of the evidence arrested the case from the jury or instructed a verdict for the defendant in error, which was the defendant below.

The plaintiff below brought an action to recover $250,000 damages upon three alleged causes of action, which were pleaded in the alternative, for a breach of a contract entered into between the parties whereby the plaintiff in error had been appointed the exclusive managing general agent for the defendant company for the purpose of soliciting life insurance for the defendant in the states of Ohio, Kentucky, West Virginia and Tennessee. The first draft of the contract provided that the time of the agency was indeterminate or indefinite; shortly afterwards the contract was amended so as to limit the period

of plaintiffs agency to twenty years from October 30, 1901. The breach of the contract is alleged to have occurred on January 1, 1912, and it was sought to recover the damages which the plaintiff alleged he sustained for the unexpired period of the contract—nine years.

The contract consisted of several distinct paper writings, but it will not be necessary for the purpose of this decision to set out these contracts in full, but merely to refer to those portions thereof which are involved in this litigation.

In substance the contract provided that the plaintiff, Boswell, was to act as the agent of the defendant in the states above named for a period of twenty years from October 30, 1901. He was to have the exclusive right to appoint agents and sub-agents in the territory, and was to receive as commissions upon all policies of insurance secured by him, or upon all insurance written by him or his sub-agents a graduated amount, being 70% on some policies, 60% on others, 50% on others, 40% on others, 30% on others, and 20% on others, of the first year's premium collected on the insurance produced by him and his sub-agents. He was also to receive upon all renewal premiums paid to the company upon policies produced by him and his agents 8% during the life of the policy on the condition that $100,000 of insurance produced under the contract remained in force.

The contract stipulated that the plaintiff should not act directly or indirectly as the agent of any other life insurance company during the period of time that he was to act as agent for the defendant company. The contract further provided that it should remain in force so long as its conditions and requirements were fulfilled.

While the amended petition of the plaintiff sets out three causes of action, it appears to us that there was but one cause of action, although there may have been more than one breach of the contract. The action was to recover damages for a breach of contract, and it is immaterial how many breaches of the contract there may have been, there could be but one cause of action, and we do not think that the practice indulged in by the plaintiff in this case, in setting out three alleged causes

of action, is one to be encouraged, as this appears to us to be merely a splitting up of the cause of action, and not a case of separate causes of action. However, this is not a material fact to be determined in the decision of this proceeding in error.

Among other things, the contract provides that the payment of the plaintiff commissions as agent is to be on the following terms and conditions, which are agreed to by the parties hereto. Then follow some fifteen separate paragraphs or provisions of the contract. The second paragraph provides that the plaintiff shall devote his entire time and best energies to the service of this company, and shall have the exclusive right to appoint agents in said district. The fourteenth paragraph or stipulation provides that so long as its conditions and requirements are fulfilled this contract shall continue in force. And the fifteenth paragraph or clause of the contract reads as follows:

"It is one of the conditions of this contract that there shall be produced by said second party from the territory included in the terms of this contract, accepted and paid for new business of the following amounts, to-wit, during the year 1902, from the state of Ohio $1,000,000; from the state of Kentucky $500,-000; from the state of West Virginia $150,000; and that each calendar year thereafter accepted and paid for new business shall equal or exceed the following amounts, to-wit, in the state of Ohio $1,500,000; in the state of Kentucky $750,000; and in the state of West Virginia $250,000; or in lieu thereof $2,500,-000 from the entire territory. The termination, however, of this contract for any cause, shall in no event terminate or cancel the renewal interest of said second party as provided in paragraph fourth hereof."

After the state of Tennessee was added to the territory of the plaintiff it was stipulated that he should produce in each calendar year after the first, during the life of the contract, $400,000 worth of accepted and paid for new business in that state, making the total amount which the plaintiff was required to produce of new business after the first year $2,900,000.

It is in evidence that down to January 1, 1912, the date of the alleged breach of the contract by the defendant, the plaintiff

Boswell failed to produce the minimum amount of business provided for in the contract, excepting during the two years 1909 and 1910. In each and every year in which the plaintiff failed to produce the minimum amount of business required by the contract the company waived in writing that provision of the contract which required Boswell to produce the minimum amount of business, excepting the last year, 1911, in which year the plaintiff failed to produce the minimum amount of insurance, and the defendant company did not waive in writing or otherwise the provision of the contract requiring him to produce this amount of business. During the years 1909 and 1910 the plaintiff wrote and paid for more than the minimum amount of insurance required from his territory, but it was claimed that this business was secured by him by practicing rebating.

One of the defenses set up by the company was that the plaintiff had breached the contract by granting rebates contrary to the law of the state of New York and contrary to the provisions of the contract. The insurance company further claimed in its answer that Boswell, the plaintiff, had breached the contract by failing to produce during the year 1911 the minimum amount of business required by the contract to be produced, and that inasmuch as the contract was to continue upon the condition that he did produce this amount of insurance, his failure in this regard automatically and *ipso facto* worked a discontinuance of his contract and rendered the insurance company immune to liability.

The plaintiff claimed that he was wrongfully discharged as agent on or about the 1st of January, 1912. The company denied that it had discharged him wrongfully or had discharged him at all but, as stated above, it claimed that he had breached the contract by his failure to produce during the year 1911 the minimum amount of the business, and had further breached the contract by resorting to rebating, and still further breached it by devoting a part of his time and attention to another insurance company—the Massachusetts Mutual Life Insurance Company.

The trial court in arresting the case from the jury was of the opinion that Boswell, while he was acting as agent for the defendant company during the year 1911, took on an engagement with the Massachusetts Mutual Life Insurance Company and devoted a part of his time and attention to securing a contract with that company, which was a competitor of the defendant company, and that by reason of that fact and by reason of the further fact that Boswell during the years 1909 and 1910 had resorted to rebating without the knowledge and consent of the defendant company, he was thereby guilty of a breach of the contract and was not entitled to recover any damages—assuming that the defendant company had discharged him, as he claimed, on or about January 1, 1912.

We are not satisfied that the evidence in this case shows conclusively that there was rebating by Boswell unknown to the defendant company, or that it was not approved by or condoned by the defendant company; nor are we satisfied that Boswell devoted any of his time or attention during the year 1911 to any company other than the defendant company.

We are inclined to the opinion that the court was not justified in arresting the case from the jury upon the grounds that Boswell had been guilty of rebating, or that he had not given his entire time and attention to the service of said company.

We are, however, clearly of the opinion that the provision of his contract which required him to produce $2,900,000 worth of business each year after the first year during the period of the contract was a condition precedent, and upon his failure to comply with this condition he lost all of his rights under the contract; he breached the contract and was not entitled to recover anything in the action. It is clearly made a condition precedent to the continuance of the contract that Boswell shall produce the amount of insurance stipulated in the contract. Although the court's action in arresting the case from the jury was predicated, in our opinion, on the wrong grounds, nevertheless, the court's action in arresting the case from the jury was justified under the state of facts brought out in the trial of the case. It is not mate-

rial upon what grounds the court's opinion is based if the conclusion of the court be the correct one.

In this case we have no doubt that Boswell, by reason of the failure to produce the minimum amount of insurance, should have been non-suited and his action dismissed. It appears from the evidence that both parties to this contract considered themselves that the condition in the contract requiring Boswell to produce the minimum amount of business was a condition precedent, from the fact that the company waived the condition each and every year of Boswell's failure to produce the required amount of business, excepting the last year, 1911. There was no waiver for the years 1909 and 1910 for the simple reason that Boswell produced more than the minimum amount of business during each of those years.

In the letters which passed between the president of the company and Boswell they both speak of the fact that it was incumbent upon Boswell to produce this minimum amount of business or his rights under the contract would be forfeited.

The record in this case is quite voluminous; indeed, it has seldom happened that a record so large as this one has been presented to this court, and we do not deem it expedient or profitable to comment upon the evidence or to cite numerous authorities in support of the conclusion which we have reached. Many authorities have been cited by counsel on both sides, but we think a reading of the contract, giving to the language the plain meaning which the parties intended it should have, shows conclusively that the provision of this contract requiring the production by Boswell of the minimum amount of business specified in the contract was a condition precedent to the continuance of the contract of agency; and Boswell having failed to produce the minimum amount, and the company having failed to waive this condition for the year 1911, either in writing or verbally, Boswell has no right of action, and the judgment of the court below in arresting the case from the jury or in instructing a verdict for the defendant was correct and the judgment will be affirmed.

JONES (E. H.), P. J., and JONES (Oliver B.), J., concur.